*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEANGELO TRAVELL MONCRIEF,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2019

No. 344524
Kent Circuit Court
LC No. 17-007017-FC

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of sexually assaulting his nine-year-old stepdaughter. Defendant chose to testify on his own behalf, and he argued that the victim was lying about the assaults because the victim's mother was jealous that he had an extra-marital affair. Defendant also claimed that the victim was lying to get attention or revenge and that the victim was jealous because defendant had a new baby with his girlfriend. On appeal, defendant argues that he is entitled to a new trial because the prosecutor personally vouched for the victim's veracity and improperly denigrated defendant's character. Defendant's arguments are without merit, and we affirm.

## I. BACKGROUND

Defendant was married to the victim's mother, Lindsey Moncrief. Because defendant and the victim's mother share the same last name, for purposes of clarity in this opinion we will refer to the victim's mother as Moncrief and will refer to defendant simply as defendant.

Moncreif testified that she and defendant separated in the summer of 2017 because of defendant's abuse and infidelity. On July 4, 2017, defendant called Moncrief using a Facebook video-chat application. Defendant asked to speak with the victim, Moncrief's nine-year-old daughter. Moncrief complied and left the victim alone to talk on the phone. She returned 15 minutes later to tell the victim to get off the phone and found the victim lying on the floor with her underwear around her ankles and the phone between her legs. Moncrief asked the victim what was going on, heard defendant curse through the phone, took the phone away from her daughter, and briefly saw defendant's face on the screen. Moncrief asked the victim if defendant

-1-

previously touched her, and the victim graphically described several instances when defendant sexually assaulted her. Moncrief took the victim to a hospital for an examination, and the hospital contacted police.

At trial, the victim described at least four separate ways that defendant had previously assaulted her. Defendant chose to testify in his own defense. In response to the victim's testimony, defendant argued that Moncrief pressured and conspired with the victim to manufacture false stories as revenge for defendant's infidelity. Defendant explained that he carried on an extramarital affair while married to Moncrief and that his girlfriend from that relationship became pregnant. Defendant testified that the victim was lying about the sexual assault at Moncrief's instruction, the victim was lying to get attention and revenge, and the victim was jealous of his new baby.

During his testimony, defendant admitted to his prior convictions for unarmed robbery and second-degree home invasion. Defendant also admitted that he was involved with "two or three other women" when he was dating Moncrief and acknowledged that this was an act of dishonesty. On cross-examination, the prosecutor attacked defendant's credibility based on his two prior theft convictions and his extramarital affair.

In his closing argument, the prosecutor admitted that the case depended on the credibility of the victim, and he argued that she was credible in light of the evidence and context. The prosecutor pointed out that the victim knew about a variety of sexual acts despite her young age and she had no reason to lie about what happened. The prosecutor emphasized that defendant had two prior convictions for theft and defendant admitted cheating on his wife. The prosecutor ended by arguing:

> Are you going to believe a con man, this guy who's willing to do—to cheat and lie to the people that love him and he loves, or are you going to believe this innocent nine-year-old? And again I submit to you ladies and gentlemen of the jury, it isn't a close call when you do that type of analysis. And the judge will instruct you that that is the type of analysis you'll have to do.

On rebuttal, the prosecutor further argued that "at nine-years-old, [the victim] is not capable of keeping that type of story together unless it's true. Unless it is true. And it is true."

The jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. Defendant now appeals his convictions as of right, claiming that the prosecutor's closing argument rises to the level of prosecutorial misconduct and entitles him to a new trial.

## II. ANALYSIS

Defendant argues that he was denied a fair trial because the prosecutor engaged in misconduct during closing argument. The test for prosecutorial misconduct is whether the prosecutor "deprived defendant of a fair and impartial trial." *Id*. at 88.[1]

To preserve a claim of prosecutorial misconduct, defendant must object in the trial court. *People v Cox*, 268 Mich App 440, 451; 709 NW2d 152 (2005). Because defendant did not object in the trial court to the prosecutor's argument, his claim of error is unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *Id*. Plain error requires that "(1) the error must have occurred, (2) the error was plain, i.e., clear and obvious, and (3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error affects a defendant's substantial rights when "the error affected the outcome of the lower court proceedings." *Id*.

We consider issues of prosecutorial misconduct "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Generally, the prosecutor may attack the honesty of a witness, but he "exceed[s] the bounds of proper argument" when he attacks defense counsel's honesty and character. See *id*. at 237-238.

Defendant argues that the prosecutor's closing argument was improper because he personally vouched for the victim's veracity and denigrated defendant's character. Neither occurred in this case.

First, defendant claims that when the prosecutor referred to the victim as an "innocent nine-year-old," he was personally vouching for the victim's veracity. This is not the case. "A prosecutor may not appeal to the jury to sympathize with the victim." *Id.* at 237. A prosecutor may, however, "argue from the facts that a witness is credible or that a witness is not worthy of belief," and "prosecutorial arguments regarding credibility are not improper when based on the evidence, even if couched in terms of belief or disbelief." *Id.* at 240. In addition, a prosecutor may make "properly responsive" remarks in response to the defendant's theory of the case. *Thomas*, 260 Mich App at 454.

The prosecutor made the "innocent nine-year-old" statement in response to defendant's argument that the victim conspired with her mother to manufacture the alleged sexual assaults. The prosecutor presented this statement as part of his theory that the victim was not at fault for what occurred. In addition, part of the prosecutor's argument regarding the veracity of the

---

[1] Some panels of this Court have stated that claims of "prosecutorial misconduct" are better characterized as "prosecutorial error" in the absence of extreme or illegal conduct on the part of the prosecutor. See *People v Savage*, __ Mich __, __; __ NW2d __ (2019) (Docket No. 339417), slip op at 5; *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

victim's statements relied on her knowledge of graphic sexual activity despite her relatively young age. Context reveals that the prosecutor's use of the phrase "innocent nine-year-old" was a permissible argument based on his theory of the case, grounded in evidence presented at trial, and in response to defendant's theory that the victim manufactured her account for purposes of revenge or jealousy. See *Thomas*, 260 Mich at 455-456 (upholding a prosecutor's argument when it was responsive to the defendant's argument that police officers were lying).

Second, defendant claims that the prosecutor impermissibly vouched for the victim's veracity when he said, "I submit to you [the victim], at nine years old, is not capable of keeping that type of story together unless it is true. Unless it is true. And it is true." Again, the prosecutor made this argument in response to defendant's theory that Moncrief colluded with or influenced the victim to lie as revenge for defendant's infidelity. The prosecutor was responding to defendant's argument that the victim intentionally lied. Because the prosecutor only raised this argument based on facts in evidence, this was an appropriate response to the defendant's theory of the case. See *id*. at 454.

Finally, defendant argues that the prosecutor's denigrating remarks toward defendant denied him a fair and impartial trial. Defendant challenges the prosecutor's statement that defendant could not be trusted because he cheated on his wife and was previously convicted of home invasion and unarmed robbery. The prosecutor also ended by calling defendant a dishonest thief and a "con man" who cheated and lied to his loved ones.

A prosecutor may argue that a witness is not credible and should not be believed, so long as the prosecutor argues from facts in evidence. See *Unger*, 278 Mich App at 240. In doing so, "prosecutors may use hard language when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996) (quotation marks omitted). Here, defendant testified as a witness. In response, the prosecutor used evidence of defendant's infidelity to his wife and his prior convictions for different types of theft. Although the prosecutor's phrasing was harsh, the facts that the prosecutor argued were properly supported by evidence in the record and in response to defendant's allegations that the victim was lying. These statements did not rise to the level of prosecutorial misconduct.

Even if the record contained evidence of prosecutorial misconduct, defendant has not demonstrated prejudice. The trial court instructed the jury that the prosecutor's arguments were not to be considered evidence and the jury should only decide the facts of the case based on the testimony of witnesses and other evidence presented. The trial court also instructed the jury that it was to consider defendant's prior convictions only to assess his credibility. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant has presented no evidence on appeal to rebut the presumption that the jury followed these instructions. Therefore, even if the prosecutor's statements constituted impermissible bolstering, argued facts not in evidence, or unnecessarily denigrated defendant's character, the trial court's instructions to the jury appropriately remedied these issues. Defendant has failed to show the prejudice necessary to overcome plain error.

Affirmed.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly